UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>         Plaintiff,<br><br>    v.<br><br>JOEL D. CORMIER,<br>  aka CHEALSIE MARIE CORMIER,<br>         Defendant. | No. 2:15-cr-03<br><br>Judge Greer |

**RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION FOR COUNSEL AND COMPASSIONATE RELEASE**

Cormier seeks immediate release from custody in light of the COVID-19 pandemic and her asthma. (Doc. 80, Motion.) The Court has authority to consider the motion because Cormier presented a request for compassionate release to the Bureau of Prisons on that same basis over 30 days ago. (Doc. 80-1, Denial.) But Cormier has not shown that her immediate release would be consistent with 18 U.S.C. § 3582(c)(1)(A), so her motion for compassionate release should be denied. Her motion for counsel (Doc. 81, Motion for Counsel) should also be denied.

**Factual Background**

**I.    Facts regarding Cormier's conviction and sentence**

Between January 2012 and April 2014, Cormier induced five minors between 14 and 16 years old to engage in illegal sexual activity. (Doc. 22, Plea Agreement, at ¶ 4(b)-(f).) Cormier purported to be a 15-year-old boy when communicating with one victim; when communicating with two others, Cormier claimed to be suffering from brain cancer. (*Id*. at ¶ 4(c), (d), (f).) She was charged with five counts of inducing a minor to engage in illegal sexual activity, in violation of 18 U.S.C. § 2422(b). (Doc. 3, Indictment.) She pleaded guilty to one count and was sentenced to a within-Guidelines term of 216 months' imprisonment followed by lifetime

supervised release. (Doc. 45, Judgment.) She is scheduled to complete her custodial sentence in September 2029 and is housed at FCI Petersburg Medium, where 17 inmates and three staff members have active COVID-19 cases, another 195 individuals who previously tested positive have since recovered, and one inmate has died. *See* Inmate Locator, Federal Bureau of Prisons, *available at* https://www.bop.gov/inmateloc/ (accessed Nov. 23, 2020); COVID-19 Cases, Federal Bureau of Prisons, *available at* https://www.bop.gov/coronavirus/ (accessed Nov. 23, 2020).

**II.     Facts regarding the COVID-19 pandemic and the Bureau of Prisons' response to it**

COVID-19 has unquestionably infected many people and caused many deaths. The United States has had over 12.1 million confirmed and presumed positive cases of COVID-19, and over 255,000 people have already died as a result of the virus. COVID-19: U.S. at a Glance, Centers for Disease Control and Prevention, *available at* https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (accessed Nov. 23, 2020).

In response to the pandemic, the Bureau of Prisons (BOP) has taken significant measures to protect the health of the inmates in its charge: "maintaining [the] safety and security of [its] institutions is [its] highest priority." Updates to BOP COVID-19 Action Plan, Federal Bureau of Prisons, *available at* https://www.bop.gov/resources/news/20200319_covid19_update.jsp (accessed Nov. 20, 2020). For example, BOP has had a pandemic influenza plan in place since 2012. *See* Pandemic Influenza Plan-Module 1: Surveillance and Infection Control, BOP Health Services Division, *available at* https://www.bop.gov/resources/pdfs/pan_flu_module_1.pdf (accessed Nov. 20, 2020). That plan establishes a six-phase framework requiring BOP facilities to begin preparations upon any "[s]uspected human outbreak overseas." *Id*. at i. Consistent with

that plan, BOP began planning for the coronavirus in January 2020 and, among other things, began developing policies in consultation with experts in the Centers for Disease Control.

On March 13, 2020, BOP began to modify its operations, in accordance with its Coronavirus Action Plan, to minimize the risk of COVID-19 transmission into and within its facilities. Since then, as events require, and in response to expert guidance, BOP has repeatedly revised its Action Plan to address the ongoing public-health crisis. BOP Implementing Modified Operations, Federal Bureau of Prisons, *available at* https://www.bop.gov/coronavirus/covid19_status.jsp (updated Oct. 8, 2020; accessed Nov. 20, 2020). That plan currently includes (1) limiting group gatherings and maximizing social distancing to the extent possible; (2) limiting internal inmate movement; (3) screening all new arrivals, quarantining at-risk asymptomatic inmates, and isolating and testing symptomatic inmates; (4) imposing numerous preventive protocols (*e.g.*, screening, masks, social distancing, frequent disinfection of high-touch surfaces, even physical barriers) for social visits; and (5) conducting enhanced health screening for staff. *Id*. Those measures help safeguard inmates against COVID-19 while providing them with any required medical care.

In addition, BOP is transferring more inmates to home confinement. On March 26, 2020, the Attorney General directed the Director of the Bureau of Prisons, upon considering the totality of the circumstances concerning each inmate, to prioritize the use of statutory authority to place prisoners in home confinement. That authority previously authorized placement in home confinement for the last six months or ten percent of a sentence, whichever is shorter, 18 U.S.C. § 3624(c)(2), and for those elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g). But then Congress authorized BOP to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" under § 3624(c)(2), so long as

3
Case 2:15-cr-00003-JRG-CRW   Document 84   Filed 11/23/20   Page 3 of 13   PageID #: 778

"the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons]." Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (Mar. 27, 2020). Since the Attorney General made the requisite findings on April 3, 2020, the Bureau of Prisons has been reviewing its population to assess each inmate's vulnerability to COVID-19, whether home confinement would increase that inmate's risk of contracting COVID-19, and whether release to home confinement would risk public safety. Home Confinement, Federal Bureau of Prisons, *available at* https://www.bop.gov/resources/news/20200405_covid19_home_confinement.jsp (accessed Nov. 20, 2020). Since March 26, 2020, the Bureau of Prisons has transferred 17,730 inmates to home confinement. *See* COVID-19 Home Confinement Releases, Federal Bureau of Prisons, *available at* https://www.bop.gov/coronavirus/ (accessed Nov. 23, 2020).

Taken together, these measures are designed to mitigate sharply the risks of COVID-19 in a BOP institution. BOP has pledged to continue monitoring the pandemic and adjust its practices as necessary to maintain the safety of prison staff and inmates while also fulfilling its mandate of incarcerating all persons sentenced or detained based on judicial orders.

**Legal Framework**

"[O]nce a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013); *accord Dillon v. United States*, 560 U.S. 817, 825 (2010). One statute that authorizes sentence modifications is 18 U.S.C. § 3582(c)(1)(A), which allows this Court, in certain circumstances, to grant a defendant's motion to reduce her term of imprisonment. Before filing the motion, however, the defendant must first request that the Bureau of Prisons file such a motion on her behalf. 18 U.S.C. § 3582(c)(1)(A). A court may

4
Case 2:15-cr-00003-JRG-CRW   Document 84   Filed 11/23/20   Page 4 of 13   PageID #: 779

grant a defendant's motion for a sentence reduction only if it was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*.

If that exhaustion requirement is satisfied, three substantive requirements must also be satisfied.[1] *See United States v. Ruffin*, 978 F.3d 1000, 1004-1005 (6th Cir. 2020). First, the Court must find that "extraordinary and compelling reasons warrant such a reduction." *Id.* at 1004 (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Second, the court must find "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* at 1005 (quoting 18 U.S.C. § 3582(c)(1)(A)). Third, "[e]ven if a district court finds that extraordinary and compelling reasons exist and that a sentence reduction comports with [any applicable policy statement], the court may not grant the reduction before 'considering the factors set forth in section 3553(a) to the extent that they are applicable.'" *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

The Sentencing Commission's policy statement on compassionate release is found at U.S.S.G. § 1B1.13. That statement provides that a court may reduce a custodial sentence if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in

---

[1] As an alternative, a defendant may be eligible for relief—even if he does not show any "extraordinary and compelling reasons" under § 3582(c)(1)(A)(i)—if he meets the requirements of § 3582(c)(1)(A)(ii): "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)." That provision "is generally not at issue in the usual compassionate release case involving 'extraordinary and compelling reasons.'" *United States v. Jones*, __ F.3d __, No. 20-3701, 2020 WL 6817488, at *1 n.3 (6th Cir. Nov. 20, 2020).

18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13. The policy statement includes an application note that identifies various types of medical conditions that qualify as "extraordinary and compelling reasons," *e.g.*, a terminal illness or a "serious physical or mental condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1(A). The application note also identifies other conditions and characteristics as "extraordinary and compelling reasons" based on the defendant's age or family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(B)-(C). Lastly, the note recognizes the possibility that the Bureau of Prisons could identify other grounds that amount to "extraordinary and compelling reasons." U.S.S.G. § 1B1.13, cmt. n.1(D); *see also* Program Statement 5050.50, Federal Bureau of Prisons, *available at* https://www.bop.gov/policy/progstat/5050_050_EN.pdf (accessed Nov. 20, 2020).

A panel of the Sixth Circuit recently held "that U.S.S.G. § 1B1.13 is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release" and that consequently, "[i]n cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *United States v. Jones*, __ F.3d __, No. 20-3701, 2020 WL 6817488, at *9 (6th Cir. Nov. 20, 2020). That holding is arguably dicta, *see id.* at *13 (Cook, J., concurring), and the United States maintains that there is "no reason to believe that the identity of the movant . . . should have any impact on the factors the Court should consider." *United States v. York*, Nos. 3:11-cr-76, 3:12-cr-145, 2019 WL 3241166, at *4 (E.D. Tenn. July 18, 2019); *accord United States v. Barnes*, No. 3:13-cr-117, 2020 WL 3791972, at *5 (E.D. Tenn. July 7, 2020) ("The First Step Act created a way for

6

defendants to obtain expedited judicial review of a compassionate release request; it does not follow . . . that it changed the nature of that review."); *United States v. Ebbers*, 432 F. Supp. 3d 421, 427 (S.D.N.Y. 2020) ("Congress in fact only expanded access to the courts; it did not change the standard."). Nevertheless, *Jones* is binding upon this Court, and the United States raises its disagreement with *Jones* only to preserve its argument—that § 1B1.13 applies equally to all § 3582(c)(1)(A) motions—for possible appeal.

The "extraordinary and compelling reasons" requirement is not meaningless. Under any reading of the statute, a defendant's proffered reason must be "extraordinary"—meaning exceptional or uncommon. *United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. Apr. 22, 2020); *United States v. Sapp*, No. 14-CR-20520, 2020 WL 515935, at *3 (E.D. Mich. Jan. 31, 2020). It must also be "compelling"—meaning "so great that irreparable harm or injustice would result if the relief is not granted." *Sapp*, 2020 WL 515935, at *3. And it must "warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).

As the movant, Cormier has the burden to establish her eligibility for a sentence reduction. *E.g.*, *United States v. Rodriguez*, 896 F.2d 1031, 1033 (6th Cir. 1990) (reasoning that a criminal defendant has the burden to prove facts that could decrease his sentence, because the "burden of proof is ordinarily placed upon the party who benefits from the establishment of a fact"); *accord United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992). And she "cannot satisfy h[er] burden of proof by simply citing to nationwide COVID-19 statistics, asserting generalized statements on conditions of confinement within the BOP, or making sweeping allegations about a prison's ability or lack thereof to contain an outbreak." *United States v. Wright*, No. CR-16-214-04, 2020 WL 1976828, at *5 (W.D. La. Apr. 24, 2020).

## Argument

**I.  As a preliminary matter, Cormier has not established her entitlement to counsel.**

Cormier asks for counsel to assist her in litigating a request for release.  (Doc. 81, Motion for Counsel.)  A standing court order appoints Federal Defender Services of Eastern Tennessee (FDS) to represent her—and all other defendants who file *pro se* motions for compassionate release in this district.  *See* Standing Order 19-04, Eastern District of Tennessee, *available at* https://www.tned. uscourts.gov/sites/tned/files/SO-19-04_first _step.pdf (accessed Nov. 20, 2020).  Because Cormier previously accused FDS of rendering constitutionally ineffective assistance (*see* Doc. 49, § 2255 Motion; Doc. 76, Memorandum Opinion), FDS has declined to further represent Cormier.  (Doc. 82, Notice.)

In any event, there is no constitutional right to counsel in post-conviction proceedings. *E.g.*, *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).  Although courts have discretion to appoint counsel when "the interests of justice so require," 18 U.S.C. § 3006A(a)(2), Cormier has not shown that the interests of justice require the appointment of counsel here.  In assessing whether to appoint counsel, courts usually consider, among other things, the nature of the case, the factual or legal complexity of the issue, and a litigant's ability to present her own claims for relief.  *E.g.*, *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993).  Claims for release in light of COVID-19 are "not beyond the capability of an ordinary *pro se* litigant." *United States v. Banner*, No. 2:12-cr-93, 2020 WL 4289597, at *5 (E.D. Tenn. July 27, 2020).  The Court should thus deny Cormier's request for appointed counsel.

**II.  Cormier has not established that she is eligible for release under 18 U.S.C. § 3582(c).**

Because the COVID-19 pandemic poses a threat to every person worldwide, it is not a basis for a sentence reduction on its own.  *E.g.*, *United States v. Raia*, 954 F.3d 594, 597 (3d Cir.

8

2020). Section 3582(c)(1)(A) contemplates sentence reductions for specific individuals, based on "extraordinary and compelling" reasons, not the widespread prophylactic release of inmates and the modification of lawfully imposed sentences to deal with a global viral pandemic. *E.g.*, *Wright*, 2020 WL 1976828, at *5 ("review of a motion for release based on COVID-19 is highly fact-intensive and dependent on the specific conditions of confinement and medical circumstances faced by the defendant.").

That does not mean COVID-19 is irrelevant to a court's analysis of a § 3582(c)(1)(A) motion. Courts "have recognized that an inmate's especially heightened risk of infection and risk of developing severe complications from COVID-19 based on their specific medical history may constitute 'extraordinary and compelling' reasons to grant compassionate release." *United States v. Williams*, No. 3:11-cr-172, 2020 WL 6826740, at *5 (D. Conn. Nov. 20, 2020); *accord Barnes*, 2020 WL 3791972, at *6. And "[c]ourts considering defendants' medical vulnerability from COVID-19 ordinarily look to the CDC's guidance on at-risk health populations." *Williams*, 2020 WL 6826740, at *5. For example, the Centers for Disease Control has identified certain medical conditions as elevating the risk of severe illness from COVID-19 and, because the CDC defines severe illness as requiring hospitalization or even causing death, such conditions could be deemed sufficiently serious as to "substantially diminish[] the ability . . . to provide self-care within the environment of a correctional facility," thereby constituting an extraordinary and compelling reason under U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). "In determining whether a defendant's medical vulnerability to the virus constitutes 'extraordinary and compelling' reasons for re-sentencing, courts have considered a multitude of factors . . . including: defendants' age, the severity and documented history of their health conditions, defendants' history of managing

9

those conditions in prison, the proliferation and status of infection at defendants' facilities, and the proportion of the term of incarceration that has been served." *Id.*

Cormier claims she is at increased risk of COVID-19 due to asthma "since childhood," but she has not provided any medical records or other documentation to substantiate her claim. (Doc. 80, Motion at 1-3.) Before her sentencing in 2015, she did not mention asthma to the probation officer, and medical records obtained from the Bureau of Prisons indicate that Cormier reported a history of asthma and first requested an inhaler in August 2020. (Medical Records, filed separately under seal.) Notably, the CDC has not recognized asthma as increasing the risk of severe illness from COVID-19, stating only that those with moderate to severe asthma "might" be at increased risk. *See* Medical Conditions and Risk for Severe COVID-19 Illness, Centers for Disease Control, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated Nov. 2, 2020; accessed Nov. 20, 2020). Moreover, the available medical records do not establish that Cormier's asthma is at least moderate. Guidelines for the Diagnosis and Management of Asthma at 5, National Heart, Lung, and Blood Institute, National Institutes of Health, *available at* https://www.nhlbi.nih.gov/sites/default/files/media/docs/12-5075.pdf (accessed Nov. 9, 2020) (classifying asthma by severity). The Court should thus find that Cormier has not established that her medical condition is an extraordinary and compelling reason for release. *See, e.g.*, *United States v. Singh*, No. 2:17-cr-210, 2020 WL 1937437, at *2 (E.D. Cal. Apr. 22, 2020) (denying release to 62-year-old who did not identify "any medical conditions that render him particularly vulnerable to COVID-19"); *United States v. Pinto-Thomaz*, No. 18-cr-579, 2020 WL 1845875, at *3 (S.D.N.Y. Apr. 13, 2020) (finding no reason to release 34- and 35-year-old defendants whose presentence reports listed no significant medical conditions).

In any event, the totality of the 18 U.S.C. § 3553(a) weigh strongly against Cormier's release. *E.g.*, *Ruffin*, 2020 WL 6268582 (affirming denial of release to defendant who had not served half of his 25-year sentence); *see also United States v. Oliver*, No. 2:17-cr-20489, 2020 WL 2768852, at *2, *7 (E.D. Mich. May 28, 2020) (denying release of defendant with proven risk factor because it would "lead to unwarranted sentencing disparities and improperly minimize the serious nature of [the] offense"). Compassionate release is "typically [granted] only . . . after . . . a significant term of incarceration," *United States v. Johns*, No. CR 91-392-TUC-CKJ, 2019 WL 2646663, at *2 (D. Ariz. June 27, 2019) (collecting cases), and the Court may consider "the amount of time served in determining whether a sentence modification is appropriate." *United States v. Kincaid*, 802 F. App'x 187 (6th Cir. 2020). After all, Congress directed courts to consider § 3582(c)(1)(A) motions in light of the § 3553(a) factors, and that analysis necessarily includes consideration of the length of the sentence: "courts routinely weigh whether a certain amount of time is 'sufficient, but not greater than necessary,' to serve § 3553(a)'s purposes . . . [and] may use that same calculus when deciding whether to grant a motion for compassionate release." *United States v. Kincaid*, 805 F. App'x 394, 395-96 (6th Cir. 2020).

Cormier induced five separate minors to engage in unlawful sexual activity, for which she was sentenced to 216 months' imprisonment. (Doc. 45, Judgment.) To date, she has only served 77 months in custody, *i.e.*, less than the ten-year statutory mandatory minimum for her offense of conviction. Even with her earned and projected good-time credit, she has more than 106 months remaining on her sentence. *See* Inmate Locator, Federal Bureau of Prisons, *available at* https://www.bop.gov/inmateloc/ (accessed Nov. 23, 2020) (showing that she is not scheduled for release until September 2029). Granting her immediate release would thus be inconsistent with the totality of the § 3553(a) factors—*e.g.*, "the nature and circumstances of the offense,"

§ 3553(a)(1); "the need for the sentence imposed to reflect the seriousness of the offense . . . [and] provide just punishment," § 3553(a)(2)(A); "the sentencing range established" by the Guidelines, § 3553(a)(4); and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." § 3553(a)(6).

Finally, crime victims have the right to be "reasonably heard" in any public court proceeding "involving release." 18 U.S.C. § 37741(a)(2); *see also Ebbers*, 432 F. Supp. 3d at 426 (stating that, before ruling on a compassionate-release motion, the court ordered the government to notify the victims and allowed time for them to comment). The United States notified Cormier's victims of her pending motion, and one victim submitted a written statement "strong[ly] opposi[ng]" any reduction in Cormier's sentence. (Victim Statement, attached.) If any other victim submits a written statement, the United States will forward it to the Court.

## Conclusion

Cormier has not proven that her release is appropriate under 18 U.S.C. § 3582(c)(1)(A), nor that she is entitled to counsel. This Court should decline to grant any sentence reduction.[2]

Respectfully submitted,

J. Douglas Overbey
United States Attorney

by:   *s/ William A. Roach, Jr.*
William A. Roach, Jr.
Assistant United States Attorney
800 Market Street, Suite 211
Knoxville, Tennessee 37902
(865) 545-4167
William.Roach@usdoj.gov
Tennessee BPR No. 028349

---

[2] If the Court nonetheless grants release, the United States asks the Court to protect public health by directing the Bureau of Prisons to quarantine Cormier for at least ten days beforehand. If she were to test positive for COVID-19 during that period, the United States

12

Case 2:15-cr-00003-JRG-CRW   Document 84   Filed 11/23/20   Page 12 of 13   PageID #: 787

I certify that on November 23, 2020, this response was filed electronically and a true copy will be sent to defendant by regular mail, postage prepaid, addressed as follows:

Joel Cormier
No. 48108-074
F.C.I. Petersburg Medium
P.O. Box 1000
Petersburg, VA  23804

                                            *s/ William A. Roach, Jr.*
                                            William A. Roach, Jr.
                                            Assistant United States Attorney

---

would seek to extend the release date until she tested negative or had no symptoms for ten days, whichever is earlier.  The United States also asks the Court, if granting release, to impose an additional term of supervised release "that does not exceed the unserved portion of the original term of imprisonment," 18 U.S.C. § 3582(c)(1)(A), to impose the same special conditions the Court previously deemed appropriate (Doc. 45, Judgment at 4), and to include a lengthy term of home confinement as a condition of that release, as authorized by U.S.S.G. § 5F1.2 and 18 U.S.C. § 3583(d).