UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:15-CR-00003-JRG |
| | ) | |
| JOEL D. CORMIER | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Joel D. Cormier's Pro Se Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582 [Doc. 80], Ms. Cormier's Pro Se Motion for Appointment of Counsel [Doc. 81], and the United States' Response in Opposition [Doc. 84] For the reasons herein, the Court will deny Ms. Cormier's motions.

### I. BACKGROUND

In 2015, Ms. Cormier pleaded guilty to using a facility or means of interstate commerce to knowingly persuade or attempt to persuade, induce, entice, or coerce a minor to engage in illegal sexual activity, in violation of 18 U.S.C. § 2422(b). [Plea Agreement, Doc. 22; Minute Entry, Doc. 25]. At sentencing, Ms. Cormier's total offense level was 36 and her criminal history category was I. [PSR, Doc. 28, ¶¶ 80, 93]. Under § 2422(b), she was subject to a mandatory minimum sentence of 120 months' imprisonment, but her guidelines range was 188 months to 235 months. [Statement of Reasons, Doc. 46, at 1]. The Court sentenced her to a guidelines-range sentence of 216 months' imprisonment and a lifetime of supervised release. [J., Doc. 45, at 2–3].

Acting pro se, Ms. Cormier now moves the Court for compassionate release under 18 U.S.C. § 3582(c)(1)(A) due to the COVID-19 pandemic, citing an underlying medical condition, asthma. [Def.'s Mot. at 2; *see* Def.'s Medical Records, Doc. 88, at 3 (describing "a history of

asthma)"]. According to Ms. Cormier, "her medical condition—asthma—makes her particularly vulnerable to the virus, COVID-19[,] were she to contract it." [Def.'s Mot. at 2]. Ms. Cormier also claims that FCI Petersburg-Medium, the facility where she is incarcerated, is experiencing an outbreak of COVID-19. [*Id.* at 3]. In response, the United States opposes Ms. Cormier's motion, arguing that she has failed to identify an extraordinary and compelling reason for her release, [United States' Resp. at 8–10], and that "the totality of the 18 U.S.C. § 3553(a) [factors] weigh strongly against [her] release," [*id.* at 11]. Having carefully reviewed and considered the parties' arguments, the Court is now prepared to rule on Ms. Cormier's motion.

## II.  ANALYSIS

"[O]nce a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (quoting *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). Although § 3582(c)(1)(A) begins with the declaration that "[t]he court may not modify a term of imprisonment once it has been imposed," Congress enacted the First Step Act, Pub. L. No. 115-319, 132 Stat. 5194 (2018), which amended § 3582(c)(1)(A) so that courts can consider motions for compassionate release once a defendant either exhausts her administrative remedies with the Bureau of Prisons or waits thirty days after submitting a request to the warden. Section § 3582(c)(1)(A) now states:

> (c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
>  (1) in any case—
>
>   (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,

2

> may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A). The United States concedes that "[t]he Court has authority to consider [Ms. Cormier's] motion because Cormier presented a request for compassionate release to the Bureau of Prisons . . . over 30 days ago." [United States' Resp. at 1].

Under § 3582(c)(1)(A), compassionate release is "discretionary, not mandatory," *United States v. Jones*, 980 F.3d 1098, 1106 (6th Cir. 2020) (citation omitted), and the statute contains three substantive requirements that the Court must address in sequential order before it can grant compassionate release, *id.*; *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020). First, the Court must determine that "extraordinary and compelling reasons warrant" a sentence reduction. *Ruffin*, 978 F.3d at 1004 (quoting § 3582(c)(1)(A)(i)). Second, the Court must determine that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* (quoting § 3582(c)(1)(A)). And third, the Court must consider any applicable factors under § 3553(a) "and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular

3

circumstances of the case." *Jones*, 980 F.3d at 1108 (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010))).

### A. The First Requirement: Extraordinary and Compelling Circumstances

When determining whether an inmate, in requesting compassionate release, has identified reasons that are extraordinary and compelling in nature, "courts have universally turned to USSG § 1B1.13 to provide guidance on the 'extraordinary and compelling reasons' that may warrant a sentence reduction." *United States v. Coker*, No. 3:14-CR-085, 2020 WL 1877800, at *3 (E.D. Tenn. Apr. 15, 2020) (quotation omitted). Section 1B1.13 states:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction; or
>
> (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

USSG § 1B1.13(1)–(3).

Although § 1B1.13 does not define "extraordinary and compelling reasons," the guideline commentary's first application note lists four "circumstances" in which "extraordinary and compelling reasons" are present:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

4

(A) Medical Condition of the Defendant.—

>   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

>   (ii) The defendant is—

>>     (I) suffering from a serious physical or medical condition,
>>     (II) suffering from a serious functional or cognitive impairment, or
>>     (III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

>   (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

>   (C) Family Circumstances.—

>>     (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>>     (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

>   (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

USSG § 1B1.13 cmt. n.1(A)–(D). In these provisions, "Application Note 1 identifies three specific extraordinary and compelling reasons (tied to the defendant's health, age, or family circumstances) and a fourth catchall," *Ruffin*, 978 F.3d at 1005 (citing *id.*), under which the Bureau of Prisons' director has license to grant release for "reason[s] other than" the three reasons in Application Note 1(A)–(C), USSG § 1B1.13 cmt. n.1(D).

5

But the First Step Act "allow[s] defendants," for the first time, "to file reduction-of-sentence motions when the Bureau refuse[s] to do so," *Ruffin*, 978 F.3d at 1004, and district courts, when considering these motions and determining whether extraordinary and compelling circumstances exist for an inmate's release, now have authority to consider "reason[s] other than" the three reasons in Application Note 1(A)–(C), *see Jones*, *Jones*, 980 F.3d at 1111 (stating that "the as-written catch-all provision," which "still refers to the Director of the BOP as the absolute arbiter of 'extraordinary and compelling,'" "contravenes Congress's motivation for reforming compassionate release in the First Step Act and ignores the Sentencing Commission's grounds for augmenting § 1B1.13's application notes"); *compare Ruffin*, 978 F.3d at 1006, 1008 (declining to decide whether, "after the First Step Act, district courts may find additional extraordinary and compelling reasons other than those in [§ 1B1.13's] commentary (such as a once-in-a-century pandemic)," or whether, instead, "Application Note 1's reasons remain exclusive and that the note's catchall delegates to the Bureau of Prisons (not the courts) the task of identifying other reasons"), *with Jones*, 980 F.3d at 1101, 1109, 1111 ("We resolve a debate that we first teed up in *Ruffin*, holding that" district courts, "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act," have "full discretion to define 'extraordinary and compelling' without consulting the policy statement [in] § 1B1.13" (footnote omitted)).

The district courts' authority to eschew Application Note 1(A)–(C) comes from the Sixth Circuit's recent decision in *Jones*, in which the Sixth Circuit observed that the Sentencing Commission has not updated § 1B1.13 in response to the First Step Act and concluded that § 1B1.13, in its current form, therefore cannot serve as an applicable policy statement under § 3582(c)(1)(A). *Jones*, 980 F.3d at 1101, 1109; *compare* 18 U.S.C. § 3582(c)(1)(A) (stating that district courts must conclude that a sentence reduction "is consistent with applicable policy

6

statements issued by the Sentencing Commission"), *with Jones*, 980 F.3d at 1101, 1109 (holding that § 1B1.13 is "not an 'applicable' policy statement in cases where incarcerated persons file their own motions in district court for compassionate release" because "the Commission has not updated § 1B1.13 since the First Step Act's passage in December 2018" (citation omitted)).[1]

In deciding *Jones*, however, the Sixth Circuit did not appear altogether to forbid district courts from looking to § 1B1.13—that is, to the "three specific extraordinary and compelling reasons" in Application Note 1(A)–(C), *Ruffin*, 978 F.3d at 1005 (citing USSG § 1B1.13 cmt. n.1(A)–(D))—with an eye toward guidance, rather than with an eye toward deference. *See Jones*, 980 F.3d at 1109, 1111 (stating that § 1B1.13 "does not *wholly* survive the First Step Act's promulgation" and expressing an intention of "preserving as much of § 1B1.13 that can be saved" (emphasis added)); *see also id.* at 1111 (stating that "federal judges *may* skip" an analysis under § 1B1.13 and have "full discretion" to choose whether "to define 'extraordinary and compelling' without consulting the policy statement [in] § 1B1.13" (emphasis added) (footnote omitted))); *United States v. Carr*, No. 20-5784, at 3 (6th Cir. Oct. 26, 2020) (PACER) (determining that "the district court did not err by considering the Sentencing Commission's statement defining 'extraordinary and compelling reasons' when deciding whether [the defendant's] circumstances warranted compassionate release" because the district court merely "treated the policy statement as 'helpful guidance'" (quotation and citation omitted)).

Even so, the Court, in its discretion, will abstain from an analysis under Application Note 1(A)–(C)—outmoded as it is—and instead turn to the Center of Disease Control's guidelines in

---

[1] The United States contends that the Sixth Circuit's holding in *Jones* "is arguably dicta," [United States' Resp. at 6], a contention that one district court has already strenuously rejected, *see United States v. White*, ___ F. Supp. 3d ___, 2020 WL 7240904, at *2 (E.D. Mich. Dec. 9, 2020) ("[*Jones*'s] holding was necessary to the decision of the case. The government may not like the *Jones* court's answer to the question it posed, but calling it *dictum* misrepresents that holding in that case. Ethical lapses by the Executive Branch like this do not advance the cause of justice, irrespective of the underlying merits of the motion."). This Court, too, rejects the United States' contention out of hand.

considering whether Ms. Cormier's asthma, against the backdrop of the COVID-19 pandemic, is an extraordinary and compelling reason for her release. *See, e.g.*, *Cameron v. Bouchard*, 462 F. Supp. 3d 746, 756–57 (E.D. Mich.), *vacated on other grounds*, 815 F. App'x 978 (6th Cir. 2020); *Awshana v. Adduccl*, 453 F. Supp. 3d 1045, 1050 (E.D. Mich. 2020); *see also Valentine v. Collier*, 140 S. Ct. 1598, 1600 n.2 (2020) (citing the CDC's guidelines in a case involving COVID-19); *cf. Sch. Bd. of Nassau Cty. v. Arline*, 480 U.S. 273, 287 (1987) (stating that "courts normally should defer to the reasonable medical judgments of public health officials" (footnote and quotation omitted)). According to the CDC's guidelines, "[p]eople of any age with the following conditions *are at increased risk* of severe illness from" COVID-19:

- Cancer
- Chronic kidney disease
- COPD (chronic obstructive pulmonary disease)
- Down syndrome
- Heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies
- Immunocompromised state (weakened immune system) from solid organ transplant
- Obesity (body mass index [BMI] of 30 kg/m$^2$ or higher but $< 40$ kg/m$^2$)
- Severe Obesity (BMI $\geq 40$ kg/m$^2$)
- Pregnancy
- Sickle cell disease
- Smoking
- Type 2 diabetes mellitus

*Coronavirus Disease 2019 (COVID-19): People Who Are at Higher Risk for Severe Illness*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Dec. 29, 2020).

Ms. Cormier's underlying condition—asthma—matches none of those that the CDC identifies as likely to put an individual at a heightened risk of severe illness from COVID-19. The Court sympathizes with Ms. Cormier's concerns, but it is unwilling to order the release of prisoners whose underlying conditions, based on the CDC's guidelines, do not place them at a

8

heightened risk of severe illness from COVID-19; otherwise, the Court, to be evenhanded, would face the untenable situation of having to release all prisoners with any underlying condition. *See United States v. Wright*, No. CR-16-214-04, 2020 WL 1976828, at *5 (W.D. La. Apr. 24, 2020) ("The Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." (footnote omitted))*; see also United States v. Dusenbery*, No. 5:91-cr-291, 2019 WL 6111418, at *2 (N.D. Ohio Nov. 18, 2019) (recognizing that "compassionate release due to a medical condition is an extraordinary and rare event" (quotation omitted)). But even if Ms. Cormier had identified an extraordinary and compelling reason for her release under § 3582(c)(1)(A), she still would not be entitled to compassionate release because the applicable factors under § 3553(a) weigh against it. *See Ruffin*, 978 F.3d at 1008 ("We have repeatedly recognized that district courts may deny relief under the § 3553(a) factors even if 'extraordinary and compelling' reasons would otherwise justify relief." (citations omitted)).[2]

### B. The Third Requirement: Applicable Factors under § 3553(a)

The Court considered § 3553(a)'s factors "in some depth at the original sentencing," *United States v. Curry*, 606 F.3d 323, 331 (6th Cir. 2010), so it has no obligation to readdress all of those factors now, *see* 18 U.S.C. § 3582(c)(1)(A) (requiring district courts to consider § 3553(a)'s factors "to the extent that they are applicable"); *United States v. Jones*, 407 F.

---

[2] The Court will exercise its discretion to skip an analysis under § 1B1.13 in favor of an analysis under § 3553(a). *See Jones*, 2020 WL 6817488 at *7, 9 (holding that § 1B 1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release" and stating that district courts, therefore, "may skip step two of the § 3582(c)(1)(A) inquiry"); *United States v. Lamar*, No. 18-20183, 2020 WL 7319431, at *4 (E.D. Mich. Dec. 10, 2020) ("The government . . . point[s] to one line in section 1B1.13 that requires the prisoner to prove lack of dangerousness. That argument is a dead letter after the Sixth Circuit's decision in *Jones* . . . . That is not to say that dangerousness is irrelevant. It is a factor incorporated in section 3553(a), which must be "consider[ed]" before release for extraordinary and compelling reasons may be allowed. (quoting 18 U.S.C. § 3553(a)(2)(C))).

9

App'x 22, 25 (6th Cir. 2011) (stating that in *Curry* "we held that the district court did not abuse its discretion even though it had not expressly considered all of the § 3553(a) factors" because "§ 3582(c)(2) proceedings 'do not constitute a full resentencing of the defendant' and do not require the same procedural formalities as plenary sentencings" (quoting *Curry*, 606 F.3d at 330–31)); *see also Jones*, 980 F.3d at 1114 (stating that "[d]istrict courts should consider all *relevant* § 3553(a) factors before rendering a compassionate release decision" (emphasis added) (citing *Gall v. United States*, 552 U.S. 38, 49–50 (2007))). "[A]s long as the record *as a whole* demonstrates that the pertinent factors were taken into account," the Court's analysis is adequate. *Jones*, 980 F.3d at 1114 (quotation omitted).

In Ms. Cormier's case, the relevant factors that the Court will address include § 3553(a)(1), (2), (4), and (6):

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
>> . . . .
>
> (4) the kinds of sentence and the sentencing range established for—
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>
>> . . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct

18 U.S.C. § 3553(a)(1)–(2), (4), (6).

As for the nature and circumstances of Ms. Cormier's offense, Ms. Cormier used a facility or means of interstate commerce to entice a minor—an extremely serious offense. *See United States v. Dobrowolski*, 406 F. App'x 11, 13 (6th Cir. 2010) (stating that "the attempted sexual enticement of a minor is a very serious crime"). In addition, the Court has refamiliarized itself with Ms. Cormier's presentence investigation report and her history and characteristics, and the Court is of the conviction that she would pose a danger to the public if it were to order her release.

Ms. Cormier admittedly used a facility or means of interstate commerce to entice five separate minors over roughly a two-year timeframe. [Plea Agreement at 2–5; PSR ¶¶ 8–12].[3] While communicating with one of the minor victims, she pretended to be a teenage boy with brain cancer, and early one morning, she drove to meet the minor victim in Greene County, Tennessee. [PSR ¶ 10]. She succeeded in persuading the minor to sneak out of her home in the predawn hours and meet her for the purpose of engaging in sexual activity. [*Id.*]. In addition, at the age of nine, Ms. Cormier sexually molested her four-year-old sister, who habitually "sle[pt] with her door locked due to the defendant attempting to enter her bedroom throughout the night." [*Id.* ¶ 109]. Simply, these facts—each of which chronicles a calculated, persistent, and classic pattern of predatory behavior—are not facts under which Ms. Cormier can realistically contend that her release would not present a danger to the public. And, in fact, Ms. Cormier does not even attempt to do so.

---

[3] As a general matter, when a defendant does not "produce some evidence that calls the reliability or correctness of the alleged facts [in the PSR] into question," a district court "may rely entirely on the PSR." *United States v. Lang*, 333 F.3d 678, 681 (6th Cir. 2003) (quotation omitted); *see United States v. Roark*, 403 F. App'x 1, 4 n.2 (6th Cir. 2010) ("[T]he PSR *is* evidence, at least in the sense that it may be considered at sentencing." (citing *United States v. Silverman*, 976 F.2d 1502, 1511 (6th Cir. 1992))).

11

To reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, "courts have generally granted compassionate release only to defendants who have served a significant portion of their sentences." *United States v. Kincaid*, No. 3:10-CR-00160-1-TAV-HBG, at 13 (E.D. Tenn. Oct. 29, 2019) (citations omitted) (PACER), *aff'd*, 802 F. App'x 187 (6th Cir. 2020). Ms. Cormier has served less than half of her sentence, and her release would therefore result in a substantial reduction in her sentence. *See Kincaid*, 802 F. App'x at 188 ("[T]he need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law permit the court to consider the amount of time served in determining whether a sentence modification is appropriate."). A substantial reduction in Ms. Cormier's sentence simply would not reflect the seriousness of her offense, promote respect for the law or afford adequate deterrence, or adequately protect the public from future crimes. 18 U.S.C. § 3553(a)(2); *see Ruffin*, 978 F.3d at 1008 (affirming the district court's denial of an inmate's request for compassionate release when he "ha[d] yet to serve even half of his 25-year sentence").

In fact, Ms. Cormier has currently served less than the ten-year minimum sentence that Congress mandated in 18 U.S.C. § 2422(b), so if the Court were to grant a reduction in her sentence by ordering her release, it would risk creating "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 28 U.S.C. § 3553(a)(6); *see Dobrowolski*, 406 F. App'x at 13 (recognizing that "Congress intended to impose lengthy mandatory-minimum sentences in cases" involving the "sexual enticement of a minor"); *United States v. Fitzhugh*, No. 16-mj-30364, 2016 WL 4727480, at *4 (E.D. Mich. Sept. 12, 2016) ("Congress intended to impose lengthy mandatory-minimum sentences in child sexual abuse cases to demonstrate the danger that such offenses present to children. Therefore,

12

these mandatory sentences reflect a Congressional determination that individuals who sexually exploit minors are inherently dangerous." (footnote omitted)); *United States v. Spencer*, No. 2:13–mj–129, 2013 WL 2417976, at *3 (S.D. Ohio June 3, 2013) ("The 1998 legislative history shows that when Congress enhanced the penalty for violating § 2422(b), including adding a ten-year mandatory minimum sentence, it was concerned at least in part with 'pedophiles who stalk children on the Internet.'" (quoting H.R .Rep. No. 105–557, at 12 (1998))).

Lastly, the Court would be remiss if it did not consider COVID-19's impact on FCI Petersburg-Medium—a consideration that is relevant to § 3553(a)(2)(D). *Jones*, 980 F.3d at 1115. An inmate's compassionate release is an extraordinary and rare occurrence, *see United States v. Dusenbery*, No. 5:91-cr-291, 2019 WL 6111418, at *2 (N.D. Ohio Nov. 18, 2019) (stating that "[c]ompassionate release due to a medical condition is an extraordinary and rare event" (quotation omitted)), and the general threat of COVID-19—that is, the fear that it may infiltrate a prison's population—cannot justify it, *see United States v. Bothra*, No. 20-1364, 2020 WL 2611545, at *2 (6th Cir. May 21, 2020) (noting that courts have "been reluctant to find that generalized fears of contracting COVID-19, without more, constitute a compelling reason" (citations omitted)); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]"); *United States v. Smoot*, No. 2:19-CR-20, 2020 WL 1501810, at *3 (S.D. Ohio Mar. 30, 2020) ("The mere possibility of an outbreak at his facility does not equate to a compelling enough reason to justify [the defendant's] release." (citation omitted)).

Infections from COVID-19 have been increasing in FCI Petersburg-Medium over the past few weeks. The Federal Bureau of Prisons ("BOP") reports thirty-seven active case among

13

the inmates at FCI Petersburg-Medium and three active cases among the staff, whereas roughly two weeks ago, it reported fifteen cases among the inmates. *COVID-19 Cases*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last updated Dec. 31, 2020). Still, the number of infections at FCI Petersburg-Medium are a far cry from those that the facility had reported a few months ago, and from those that other facilities are now experiencing. For instance, FCI Fort Dix, FCI Safford, and USP Terre Haute currently have 586, 517, and 344 infections, respectively. *Id.* And, importantly, Ms. Cormier does not claim that she has been exposed to COVID-19 or that the BOP has failed to take swift, appropriate, and effective measures to quarantine the infected inmates and staff members at FCI Petersburg-Medium. In fact, Ms. Cormier acknowledges that the warden has ordered the facility into a "stringent 'lockdown,'" though, in her view, "staff compliance with face covering requirements" has been lax. [Def.'s Mot. at 2].[4]

Under these circumstances, Ms. Cormier, who is just thirty-two years of age, has demonstrated only a speculative risk of contracting COVID-19 at FCI Petersburg-Medium and becoming seriously ill. *See Bothra*, 2020 WL 2611545 at *2 ("Courts have been reluctant to find that generalized fears of contracting COVID-19, without more, constitute a compelling reason." (citation omitted)); *see also Carr*, No. 20-5784 at 4 ("[The defendant's] allegations involving the BOP's failure to respond adequately to the risks posed by Covid-19 are the sort of 'generalized fears' that courts have found do not constitute extraordinary and compelling reasons for compassionate release." (citations omitted)); *Raia*, 954 F.3d at 597 (referring to the BOP's "extensive and professional efforts to curtail the virus's spread" (citation omitted)); *United States v. Sabot*, No. 2:14-cr-39, 2020 WL 6274983, at *4 (W.D. Pa. Oct. 26, 2020) ("[The defendant],

---

[4] Ms. Cormier claims that COVID-19 has caused "numerous deaths" at FCI Petersburg-Medium, but to date, FCI Petersburg-Medium has reported one death. [Def.'s Mot. at 3].

14

who is 32-years-old, has not demonstrated a more than speculative risk of exposure at FCC Petersburg and becoming seriously ill. The Court acknowledges that, as of this date, FCI Petersburg Medium has 42 confirmed active cases among inmates . . . . [but] [t]he mere presence of COVID-19 at FCI Petersburg Medium does not automatically entitle inmates with medical conditions to compassionate relief."). In sum, the relevant factors under § 3553(a) weigh against Ms. Cormier's release.

### C. Motion for Appointment of Counsel

In Standing Order 19–04, the Court appointed the Federal Defender Services of Eastern Tennessee ("FDSET") to represent a defendant who moves for relief under § 3582(c) and the First Step Act: "FDSET shall file a supplement to defendant's pro se motion without delay," but "[i]f FDSET determines that defendant's motion needs no supplementation, then FDSET shall file a notice stating so." SO 19-04. Citing a conflict of interest, FDSET filed a notice in which it informs the Court that it is unable to represent Ms. Cormier because her motion to vacate her sentence under 28 U.S.C. § 2255—in which Ms. Cormier alleges ineffective assistance of counsel against FDSET—is pending before the Sixth Circuit. [Notice, Doc. 82, at 1].

In place of FDSET, the Court could conceivably appoint counsel to Ms. Cormier under the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A *et seq.*, though Ms. Cormier is not entitled to representation under the CJA as a matter of right. *See id.* § 3006A(a)(1)–(2) (authorizing courts to provide financially eligible defendants with representation under certain circumstances or when "the interests of justice so require"); *cf. Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further."); *Johnson v. Avery*, 393 U.S. 483, 488 (1969) (stating that courts are under no requirement "to appoint counsel for prisoners who indicate, without more, that they wish to seek post-conviction

15

relief" and that the onus to raise "a claim to post-conviction relief usually rests upon the indigent prisoner himself with such help as he can obtain within the prison walls or the prison system" (citation omitted)).

In determining whether the interests of justice require the Court to channel "precious taxpayer funds" toward Ms. Cormier's representation, *United States v. Mosely*, 779 F. Supp. 2d 398, 400 (D. Mass. 2011), the Court "consider[s] several factors, including the nature of the case, whether the issues are legally or factually complex, and the litigant's ability to present the claims for relief to the court." *United States v. Banner*, No. 2:12-CR-093, 2020 WL 4289597, at *4 (E.D. Tenn. July 27, 2020) (citing *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993))); *see Chastain v. Williams*, No. 4:20-CV-01036, 2020 WL 5994519, at *3 (N.D. Ohio Oct. 9, 2020) ("A district court does not abuse its discretion by declining to appoint counsel where the issues in the case are straightforward and capable of resolution on the record or the Petitioner has a good understanding of the issues and the ability to present forcefully and coherently his contentions." (quotation omitted)). In the vast majority of cases, a request for compassionate release due to COVID-19 is "not beyond the capability of an ordinary *pro se* litigant," and this case is no different. *Banner*, 2020 WL 4289597 at *5. In moving for compassionate release, Ms. Cormier has expressed, with clarity, arguments that are straightforward and familiar to the Court, and the interests of justice therefore do not weigh in favor of the appointment of counsel.

### III. CONCLUSION

While the Court sympathizes with Ms. Cormier's concerns, she is not entitled to compassionate release under § 3582(c)(1)(A) because she has not identified an extraordinary and compelling reason for her release and the relevant factors under § 3553(a) militate against her release. Ms. Cormier's Pro Se Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582

16

[Doc. 80] is therefore **DENIED**. Her Pro Se Motion for Appointment of Counsel [Doc. 81] and Motion for Extension of Time [Doc. 89] are also **DENIED**.

So ordered.

ENTER:

s/J. RONNIE GREER  
UNITED STATES DISTRICT JUDGE